# UNITE0D STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| IOWA PREMIUM BEEF, LLC, and TBI CAPITAL, LLC, Plaintiffs, v. GLOBAL CAPITAL LIFE, LLC, ROD SPRAY, DANIEL L. BRUNE, and JAMES NILES, Defendants. | No. 12cv39 EJM<br><br>ORDER |

This matter is before the court on defendants' resisted renewed Motion to Dismiss Plaintiffs' Claims and, in the Alternative, to Compel Arbitration, filed February 19, 2013. Resistance filed March 8, 2013. Motion to dismiss is denied; arbitration compelled; case stayed.

In their amended complaint, Plaintiffs Iowa Premium Beef, LLC (IBP), and TBI Capital, LLC (TBI), seek damages and equitable relief from defendants Global Life, LLC (Global), Spray, Brune, and Niles, in five counts: 1 – Breach of Contract; 2 – Unjust Enrichment; 3 – Conversion; 4 – Negligent Misrepresentation; and 5 – Fraudulent Misrepresentation.

In its February 4, 2013 Order, the court ordered the First Amended Complaint be dismissed unless plaintiff filed a supplemental jurisdictional statement by no later than March 4, 2013. On that date, plaintiff filed a Supplemental Jurisdictional Statement. That Statement properly lays out the citizenship of each of the parties, including the members of the parties which are

limited liability companies, and properly establishes diversity of citizenship. Defendants have filed no objection to this since the Supplemental Jurisdictional Statement was filed. Diversity jurisdiction has been properly established.

Defendants next challenge the court's personal jurisdiction over them. Here, defendants admit they made several telephone calls and sent emails to IPB and TBI officials in Iowa regarding the proposed financing arrangement, which later became memorialized in the Letter of Interest (LOI), relating to funding a development project in Tama, Iowa. As a result of those arrangements, defendants sent wiring instructions and accepted the deposit of $950,000 from the account of Iowa entities in an Iowa bank for that project in Iowa. In addition, plaintiffs allege fraudulent and tortious conduct by defendants the brunt of which is alleged to have occurred in Iowa. Under these admitted facts and alleged facts, which must be assumed for purposes of this motion, minimum contacts under the Due Process Clause and the five factor test under the Iowa long-arm statute are met. Norton v. Local Loan, 251 N.W.2d 520, 522 (Iowa 1977) ([t]he maker of such a telephone call into Iowa should assume the burdens of Iowa law.); Remmes v. International Flavors & Fragrances, Inc., 389 F. Supp. 2d 1080 (N.D. Iowa 2005.)

Defendants next claim that this matter is subject to an agreement to arbitrate. The plaintiff was sent an offer to enter into a written LOI on April 22, 2011. (Ex. 1 to Motion to Dismiss.) Mr. Jeff Muchow, President of IPB,

accepted the offer and signed the Letter of Intent on April 25, 2011. The LOI states, in part:

> "In the event of a dispute arising from the contemplated transaction between the parties that cannot be amicably resolved between the parties through reasonable diligent prior effort, parties hereby agree to binding arbitration in the State of Wyoming or any other state selected by GLC, as the venue with sole jurisdiction. Any award will be limited to actual consideration paid, provided or due to the prevailing party."

This language clearly and unambiguously indicates an intent to arbitrate.

The Federal Arbitration Act, 9 U.S.C. sec. 1, *et seq.* (FAA) "embodies the national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006.) Under the FAA, when the parties have agreed to arbitrate and the dispute comes within the scope of the arbitration agreement, a federal court *must* compel arbitration and dismiss or stay the action pending arbitration." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 400 (1967) (emphasis in original.)

Plaintiff argues that this LOI is preliminary and unenforceable because it is not binding on the business question of the commitment to fully fund $13,000,000, which is not in dispute. But the agreement is clearly binding on many other matters, including the payment of the $950,000 deposit, the interest rate (8%), terms of the loan, many "housekeeping matters", and, at issue here, the intent to arbitrate (see paragraph from LOI quoted above.)

3

Next, plaintiff argues that the arbitration clause cited is ambiguous, and thus should be construed against the drafter, GLC. A review of the language of the clause, cited above, convinces the court that it is clear and unambiguous in regard to the disputes listed in the complaint, and applies fully to them.

Next, plaintiff claims that the second plaintiff, TBI, is not a signatory to the LOI, which document contains the arbitration clause, and thus TBI cannot be forced to arbitrate. TBI is IPB's "managing member", and thus its agent. TBI's actions herein were performed as an agent of IPB, which was a signatory to the contract that contained the agreement to arbitrate. TBI's claims are derivative of the IPB agreement and IPB's relationship with GLC. Under these circumstances, plaintiff TBI is bound along with IPB to the agreement to arbitrate. Donaldson Co. v. Burroughs Diesel, Inc. 581 F.3d 726, 732 (8th Cir. 2009) (obligation to arbitrate may extend to nonsignatories to the arbitration agreement under ordinary contract and agency principles); Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006) (An agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound.)

It is therefore

ORDERED

Denied, except granted as to compelling arbitration according to the agreement, and Stayed. By not later than October 1, 2013, the parties shall advise this court in writing as to the status of the arbitration.

4

July 3, 2013.

_____
Edward J. McManus, Judge
UNITED STATES DISTRICT COURT

5